IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Mario Casciaro, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 50094 |
| | ) | |
| vs. | ) | |
| | ) | |
| Keith Von Allmen, et al., | ) | Judge Philip G. Reinhard |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons stated below, defendants' motion [41] to dismiss is denied. The parties are directed to contact Magistrate Judge Johnston within 30 days to discuss whether a settlement conference or mediation would be beneficial at this time.

## STATEMENT-OPINION

Plaintiff, Mario Casciaro, brings this action against defendants, Keith Von Allmen, in his individual capacity ("Von Allmen"), Unknown City of Johnsburg Police Officers, in their individual capacities, and the City of Johnsburg ("Johnsburg"). This case arises from the disappearance and presumed murder of Brian Carrick ("Carrick"). During the investigation of Carrick's disappearance, plaintiff was charged with perjury and acquitted at trial. He was later charged with murder and, after his first murder trial ended in a hung jury, he was tried again, convicted and sentenced to 26 years in prison. His conviction was reversed by the Illinois appellate court. People v. Casciaro, 49 N.E.3d 39 (Ill. App. 2015).

Plaintiff filed his first amended complaint in this case on June 20, 2017 alleging, pursuant to 42 U.S.C. § 1983, a violation of his 14th Amendment Due Process rights (Count I) and conspiracy to violate his constitutional rights (Count II). He also brings state law claims for malicious prosecution (Count III), intentional infliction of emotional distress (Count IV), conspiracy (Count V), respondeat superior (Count VI) and indemnification (Count VII). Jurisdiction is proper under 28 U.S.C. § 1331 and 1367. Defendants Von Allmen and Johnsburg move [41] to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

The information in this paragraph, gleaned from People v. Casciaro, 49 N.E.3d 39 (Ill. App. 2015), provides some context for reviewing plaintiff's complaint. Carrick was last seen on December 20, 2002 at Val's Foods ("Val's"), a store in Johnsburg, Illinois. Over seven years later, in February 2010, plaintiff was indicted for Carrick's murder. After his first trial, in 2012,

1

ended in a hung jury, he was tried again, in 2013, and convicted of felony murder predicated on intimidation. One of the state's theories for the predicate offense of intimidation was that an individual, Shane Lamb, was the instrument of defendant's intimidation of Carrick. Id., at 56. During plaintiff's second trial, Lamb testified for the state. Lamb had been granted full immunity by the state for Carrick's death. Id., at 48. Lamb testified that on the date Carrick was last seen, plaintiff had called Lamb and asked him to come to Val's to talk to Carrick about money Carrick owed plaintiff. Id. He testified that when he got to Val's, he found plaintiff and Carrick arguing about the money Carrick owed plaintiff. Id., at 48-49. Lamb testified that he (Lamb) then started arguing with Carrick, lost his temper and hit Carrick and thought he had knocked Carrick out. Id., at 49. At that point, Lamb testified plaintiff told Lamb to leave the store. Id.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the complaint must state a claim to relief that is plausible on its face." Bancorpsouth, Inc. v. Federal Ins. Co., 873 F.3d 582, 586. (7th Cir. 2017) (internal quotation marks and citations omitted). All well-pleaded factual allegations are accepted as true and all reasonable inferences are drawn if favor of plaintiff. Id., at 585.

The gist of plaintiff's complaint is that defendants ignored overwhelming evidence that Carrick was killed by Robert Render, Jr. ("Render") and, despite the lack of evidence against plaintiff, diverted the investigation from Render to pursue plaintiff because Von Allmen was a friend of Render's father. Defendants withheld from plaintiff evidence implicating Render (and exculpating plaintiff) which led to plaintiff's wrongful conviction denying him his constitutional right to a fair trial.

The following facts are taken from plaintiff's complaint. Carrick was employed at Val's at the time of his disappearance. Render also worked at Val's. Von Allmen, a Johnsburg police officer, was assigned to investigate Carrick's disappearance. Von Allmen reported to Val's on December 22, 2002 and interviewed witnesses including Anthony Gebauer ("Gebauer"). Gebauer provided information inculpating Render. Gebauer told Von Allmen that Render had told him there had been a fight in the produce cooler on the night of December 20, 2002. No other witness reported anything about a fight. Gebauer told Von Allmen that Render had told him a week earlier that Render was going to jump Carrick and Render had a weapon. Render told Gebauer that he "was pissed off at Carrick about owing him money." Gebauer told Von Allmen that Render had a vendetta against Carrick and that Render had weapons. Von Allmen did not prepare a report reflecting any of these statements and did not take proper steps to disclose them to plaintiff. These statements were exculpatory for plaintiff but Von Allmen did not disclose them to plaintiff.

Von Allmen, some time prior to plaintiff's criminal trial, interviewed Jacob Kepple. Kepple told the police that Carrick had told him shortly before he went missing that Render owed him money and he was going to charge Render interest if he did not pay the money owed. Von Allmen did not prepare a report reflecting any of these statements and did not take proper steps to disclose them to plaintiff.

2

Von Allmen also interviewed Lorenzo Vallone, on or about December 22, 2002. Vallone was Gebauer's supervisor at Val's. Vallone told Von Allmen that before 7:00 p.m. on the night Carrick went missing, he gave the key that opened the padlock on the southeast exit door of Val's to Render. Vallone further told Von Allmen that later that same evening, Vallone discovered the key to the southeast exit door in the padlock. He removed the keys and took possession of them. Von Allmen did not prepare a report reflecting any of these statements and did not take proper steps to disclose them to plaintiff.

On April 4, 2003, Gebauer was working on the plumbing at Val's. He removed some ceiling tiles in the women's restroom and blood-soaked underwear fell out. Gebauer, along with his father, took the underwear to the Johnsburg police department that day. The underwear was a boy's size that could have fit Render but not plaintiff or Shane Lamb. The police departments evidence logs turned over in discovery to plaintiff's lawyer in the criminal case do not reflect that the underwear had been preserved or retained. Von Allmen inspected the underwear and threw it away. Von Allmen did not take proper steps to disclose anything about his observations of the bloody underwear to plaintiff. Because plaintiff never received any information about Von Allmen's observations about the underwear and because Von Allmen threw the underwear away, plaintiff was unable to use it in his criminal defense.

Throughout the investigation Von Allmen had numerous conversations with Render's father. He did not prepare any reports on any of these discussions and did not ensure that information and evidence of the discussions was properly disclosed to plaintiff. Von Allmen did not disclose his personal relationship with Render's father.

Plaintiff argues defendants' actions described above state a claim for a constitutional violation under Brady v. Maryland, 373 U.S. 83 (1963). "The Brady rule holds that 'suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment.' 373 U.S. at 87, 83 S.Ct. 1194. 'Suppression' occurs when the prosecution 'fail[s] to disclose evidence not otherwise available to a reasonably diligent defendant.' Jardine v. Dittmann, 658 F.3d 772, 776 (7th Cir. 2011). And evidence is deemed 'material' only when 'a reasonable probability [exists] that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)." Bryant v. Brown, 873 F.3d 988, 998 (7th Cir. 2017).

Defendants argue plaintiff has no claim for a Brady violation because plaintiff alleges Von Allmen never created any police reports for his conversations with Gebauer, Kepple, or Vallone or concerning the underwear. Defendants maintain that police officers are not required to create police reports for every person they interview. Since no police reports were created, defendants maintain "there can be no meritorious argument that officers withheld any materially favorable evidence in violation of Brady." Defendants cite Saunders-El v. Rohde, 778 F.3d 556 (7th Cir. 2015), Boyd v. City of Chicago, 225 F. Supp.3d 708 (N.D. Ill. 2016) and Jones v. City of Chicago, 856 F.2d 985 (7th Cir. 1988) in support of this argument.

3

Defendants argue Saunders-El refused to allow a Brady claim to move forward on the basis of the failure to create exculpatory evidence. They contend that here, since no reports concerning the exculpatory statements were ever created, plaintiff's claim is also barred. However, Saunders-El is distinguishable.

In Saunders-El, the plaintiff was acquitted at trial and the court noted that while it had not definitively decided that an acquittal can never produce a valid Brady claim, it has expressed doubt such a claim is possible. Saunders-El, 778 F.3d at 561-62. Saunders-El had argued that police officers' failure to admit they fabricated evidence "amounts to a withholding of exculpatory evidence in violation" of Brady. Id., at 561. The court noted Saunders-El's Brady claim sought "to charge the officers with a Brady violation for keeping quiet about their wrongdoing, not failing to disclose any existing piece of evidence." Id., at 562. The court went on to state "[i]n essence, Saunder's-El's so-called Brady claim is simply a recast of his evidence fabrication claim, and our precedent establishes that such a claim is not cognizable on account of his acquittal." Id.

Here, plaintiff was not acquitted. He has alleged several witnesses told Von Allmen in interviews things that tended to inculpate Render and that Von Allmen withheld this information. Plaintiff's Brady claim is not a recasting of his fabrication of evidence claim. He alleges specific evidence was withheld by Von Allmen and identifies that evidence.

Defendants' reliance on Boyd is likewise misplaced. They cite Boyd specifically for the proposition that "an officer is under no duty to report each encounter with a witness or file reports regarding those witnesses." Boyd, 225 F. Supp.3d at 719, citing, Jones v. City of Chicago, 856 F.2d 985, 995 (7th Cir. 1988). However, Boyd is a summary judgment case so the court was dealing with whether plaintiff produced evidence creating a genuine issue of material fact. There the evidence showed the officers prepared and disclosed police reports from which plaintiff could have found the information (whether a particular witness, because of his medical condition was able or unable to communicate) he claimed was suppressed. The court found this was sufficient to meet the requirements of Brady even if, as conceded, the police made a visit to the witness which they did not report.

Here, on a motion to dismiss, the court is dealing with allegations not evidence. There is nothing in the allegations of the complaint which indicates plaintiff had access from some other source to the information that he alleges Von Allmen withheld. Maybe the evidence will prove otherwise, but plaintiff does not have to prove his case to defeat a motion to dismiss.

Jones also does not help defendants' argument. In Jones, the court stated "Brady v. Maryland does not require the police to keep written records of all investigatory activities; but attempts to circumvent the rule of that case by retaining records in clandestine files deliberately concealed from prosecutors and defense counsel cannot be tolerated." Jones, 856 F.2d at 995. Defendants' argument is essentially that so long as a police officer does not create a written record of interviews which yield exculpatory evidence, the officer has no obligation to disclose the evidence. But, not creating a record of exculpatory evidence is no better than creating

4

records of such evidence and hiding them. See, U.S. v. Mota, 685 F.3d 644, 648 (7th Cir. 2012) ("[I]t is certainly inexcusable that Agent Aponte failed to record and report the substance of this conversation with Ponce and that the prosecution failed to learn and notify the defense of this evidence. It is a serious violation of the government's duty to turn over all evidence favorable to the accused – a duty required by our nation's standards of justice."); see also, Ott v. City of Milwaukee, 48 F. Supp,3d 1197, 1208 (E.D. Wis. 2014) (discussing information not reflected in any police reports the court stated "a reasonable jury could conclude that [the detectives] were aware of the exculpatory information obtained from Cooper and that they failed to disclose the information."). Plaintiff has sufficiently alleged that Von Allmen was aware of exculpatory evidence and failed to disclose it. Defendants' motion to dismiss plaintiff's Brady claim (Count I) is denied.

Count II is a § 1983 claim for conspiracy against Von Allmen and unknown city of Johnsburg police officers. Defendants argue plaintiff has failed to allege sufficient facts to state a claim for conspiracy and, even if he has, that the intra-corporate conspiracy doctrine defeats plaintiff's claim because "members of the same entity acting within the scope of their employment cannot be considered to be acting in 'conspiracy' with each other."

Given the fact plaintiff has sufficiently alleged a claim under Count I, there is little to be gained by dismissing Count II and requiring plaintiff to attempt to re-plead it to better state his conspiracy claim. Plaintiff has alleged the nature of the conspiracy- conspiring to violate his due process rights by concealing evidence that inculpated Render and exculpated plaintiff leading to his wrongful conviction. Plaintiff alleges Von Allmen and other unknown officers of the Johnsburg police department were participants. This is enough at this point. See, Geinosky v. City of Chicago, 675 F.3d 743, 749 (7th Cir. 2012). Defendants have notice of what the claim against them is.[1]

---

[1] It is also worth observing, as did the court in Boothe v. Sherman, 66 F. Supp.3d 1069 (N.D. Ill. 2014) (Feinerman, J.), that because all of the alleged conspirators are state actors, the conspiracy claim adds nothing to the underlying due process claim. "That is because conspiracy is not an independent basis of liability in § 1983 actions, and also because an actual denial of a civil right is necessary before a cause of action [for conspiracy] arises.(citations omitted). Put differently, Defendants cannot be held liable under § 1983 for conspiring to violate [plaintiff's] due process rights unless they actually violated [his] due process rights; but if they actually violated [his] rights, then the conspiracy charge adds nothing to the case or to [plaintiff]'s potential recovery, as § 1983 plaintiffs may recover only once for each injury. See Thomas v. Cook Cnty. Sheriff's Dep't, 604 F.3d 293, 311–13 (7th Cir.2010); 1 Sheldon H. Nahmod, Civil Rights & Civil Liberties Litigation: The Law of Section 1983 § 4:15 (4th ed. supp. 2013–2014) ('The general bar against double recovery for the same injury is also applicable to § 1983 cases.')." Boothe, 66 F. Supp.3d at 1077 (emphasis in original); see also, Scott v. City of Chicago, 619 Fed. Appx. 548 (7th Cir. 2015) ("A conspiracy between private parties and state actors authorizes suit against the private parties in federal court. See Dennis v. Sparks, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) (42 U.S.C. § 1985(3)); Adickes v. S.H. Kress & Co., 398 U.S. 144, 149–52, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (§ 1983); Dixon v. Lawton, 898 F.2d 1443, 1447–48 (10th Cir.1990) (discussing the differences between § 1983 and § 1985 conspiracy liability). All of the defendants in this suit, however, are public employees (plus their employer), which means that a conspiracy claim has no role to play. See, e.g., Fairley v. Andrews, 578 F.3d 518, 526 (7th Cir.2009).") "Nevertheless, there is no rule preventing a plaintiff from alleging multiple legal theories as bases for recovery on a single injury, particularly at the pleading stage, and so the court will not dismiss the federal conspiracy claim on this

5

Defendants also raise the intra-corporate conspiracy doctrine as a defense. The intra-corporate conspiracy doctrine, "was created to shield corporations and their employees from conspiracy for routine collaborative business decisions that are later alleged to be discriminatory," Reitz v. Creighton, No. 15 CV 01854, 2015 WL 5081485, *5 (N.D. Ill. Aug. 26, 2015), quoting, Newsome v. James, No. 96 C 7680, 2000 WL 528475 (N.D. Ill. Apr. 26, 2000). The doctrine "is commonly invoked in suits brought under 42 U.S.C. § 1985, the statute addressing conspiracies to deprive a person of civil rights." Lovelace v. Gibson, No. 17-cv-1201, 2017 WL 5196641 * 6 (C.D. Ill. Nov. 9, 2017). "The Seventh Circuit has not, however, explicitly applied the doctrine to a conspiracy under 42 U.S.C. § 1983." Id., at *7. While there is a split between the district courts in this circuit on the issue, "a majority of district courts in this circuit have found the intra-corporate conspiracy doctrine inapplicable to § 1983 cases involving police." Reitz, 2015 WL 5081485 at *4.

Extending the doctrine to defendants in this case would be inappropriate. The allegations involve actions clearly outside "routine, collaborative business decisions." Id., at * 5. Concealing exculpatory evidence in violation of Brady, is "not the product of routine police department decision-making." Id.

Count III is a state law malicious prosecution claim. The elements of an Illinois malicious prosecution claim are "(1) commencement or continuation of an original proceeding; (2) termination of the proceeding in favor of plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages." Cairel v. Alderden, 821 F.3d 823, 834 (7th Cir. 2016). Defendants argue the allegations of the complaint show there was probable cause to arrest plaintiff and that Von Allmen was not involved in the initiation of charges against plaintiff.

"In ascertaining whether an officer had probable cause, the court is to view the circumstances from the perspective of a reasonable person in the position of the officer. The jury must determine the existence of probable cause if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them. Only if the underlying facts claimed to support probable cause are not in dispute may the court decide whether probable cause exists." Gonzalez v. City of Elgin, 578 F.3d 526, 537 (7th Cir. 2009) (quotation marks and citations omitted). Probable cause exists when the facts and circumstances within the officers' knowledge and "of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense." Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006) (quotation marks and citation omitted).

The complaint alleges, as discussed above, that defendants possessed evidence that inculpated Render rather than plaintiff. The complaint does allege Render made statements that implicated plaintiff. Render told Von Allmen that he "theoretically moved Carrick's body in a garbage can from the produce cooler to the dumpster at plaintiff's request. He told an assistant state's attorney and investigator that he observed Carrick, plaintiff and Lamb in the produce cooler and that Lamb pushed Carrick in the chest and Carrick fell backwards striking his head on

---

ground at this time." Boothe., at 1077-78.

6

metal racks on the floor of the cooler. When asked about emptying a trash can with a body inside, he purportedly told the investigator that plaintiff had summoned him to assist in emptying the can. However, the complaint also alleges Render made statements in which he admitted these prior statements were all lies. The court cannot say based on the complaint that as a matter of law probable cause existed. The allegations in the complaint sufficiently raise a question whether defendants had "reasonably trustworthy information" sufficient to believe plaintiff committed an offense.

Defendants also argue that the complaint shows Von Allmen was not involved in the initiation of the charges against plaintiff. They assert the complaint contains no allegation that the prosecutor was influenced by, or relied upon, Von Allmen in deciding to charge plaintiff. Under Illinois law, liability for malicious prosecution "extends to all persons who played a significant role in causing the prosecution of plaintiff, provided all of the elements of the tort are present." Starks v. City of Waukegan, 946 F. Supp.2d 780, 794 (N.D. Ill. 2013). The complaint contains numerous allegations of Von Allmen's role in the investigation which led to plaintiff's prosecution and those allegations (see above) describe a significant role for him. The allegations are sufficient at the motion to dismiss phase of the case.

Count IV is a claim for intentional infliction of emotional distress (IIED). Defendants argue the IIED claim is untimely as it was brought more than one year after it accrued. Illinois provides a one-year statute of limitations for civil actions against Illinois local government entities and their employees. 745 ILCS 10/8-101. "[A] claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of arrest." Bridewell v. Eberle, 730 F.3d 672, 678 (7th Cir. 2013). Plaintiff brought this action more than one year after his conviction and, therefore, necessarily more than one year after his arrest.

Defendants' reliance on Bridewell is misplaced. Plaintiff's claim is based on his wrongful conviction. Illinois extended Heck v. Humphrey, 512 U.S. 477 (1994) to claims brought under Illinois law in Lieberman v. Liberty Healthcare Corp., 948 N.E.2d 1100, 1107-08 (Ill. App. 2011). Under Heck, plaintiff was barred from bringing an IIED claim based on his wrongful conviction until that conviction was overturned. Walker v. White, No. 16 CV 7024, 2017 WL 2653078, * 6 (N.D. Ill. 6/20/2017); see, Parish v. City of Elkhart, 614 F.3d 677, 683-84 (7th Cir. 2010) (reaching same conclusion under Indiana law). The Illinois Supreme Court denied the state's petition for leave to appeal in its case against plaintiff on March 30, 2016. This case was filed March 27, 2017. The IIED claim is not untimely.

Defendants also argue Von Allmen's alleged conduct was not extreme and outrageous so the claim must be dismissed. The complaint alleges Von Allmen withheld evidence of Render's guilt and diverted the investigation toward plaintiff based on his friendship with Render's father. These allegations of conduct on the part of a police officer are sufficient to survive the motion to dismiss. See, Gonzalez v. City of Waukegan, No. 16 C 2906, 2016 WL 7451627, * 9 (N.D. Ill. Dec. 28, 2016).

Count V is a conspiracy claim under Illinois law. Defendant contends plaintiff has not pled sufficient facts to allege a conspiracy. They argue plaintiff has not alleged an agreement between Von Allmen and the other defendants. However, as discussed above, plaintiff had met his notice pleading requirement by alleging the nature of the conspiracy - conspiring to violate his due process rights by concealing evidence that inculpated Render and exculpated plaintiff leading to his wrongful conviction. Plaintiff alleges Von Allmen and other unknown officers of the Johnsburg police department were participants. Defendants' argument that this claim is time barred fails for the same reason the time-barred argument failed as to the malicious prosecution claim.

Defendant argues Counts VI and VII fail because the underlying actions fail. However, since the underlying actions survive, defendants argument on these counts fail.

For the foregoing reasons, defendants' motion [41] to dismiss is denied. The parties are directed to contact Magistrate Judge Johnston within 30 days to discuss whether a settlement conference or mediation would be beneficial at this time.

Date: 11/22/2017                ENTER:

                                _____
                                United States District Court Judge

Electronic Notices. (LC)