IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| MARIO CASCIARO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 17 CV 50094 |
| ) | |
| KEITH VON ALLMEN, et al. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(4) and (6)**

NOW COME Defendants, the CITY OF JOHNSBURG (the "City"), KEITH VON ALLMEN ("Von Allmen"), KENNETH RYDBERG ("RYDBERG"), and THE ESTATE OF WILLIAM GRUENES ("GRUENES"), by and through their attorneys, PETERSON, JOHNSON & MURRAY CHICAGO, LLC, and for their Reply in Support of their Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(4) and (6), and in support thereof state as follows:

**Introduction**

Plaintiff's Response (Doc. No. 91) only underscores the ever-shifting theories of liability being advanced by Plaintiff. Plaintiff skirts the issue that the original allegations claimed no reports of encounters with witnesses were created, but now attacks only the completeness of the reports. Further, Plaintiff does not address any of the arguments regarding the service on the Estate of William Gruenes, the resulting untimeliness of any claims against the non-existent estate, or the running of the statute of limitations for the state law claims of Plaintiff against Gruenes and Rydberg. Such omissions speak volumes as to the merit of Defendants' arguments. Plaintiff has also seemed to abandon his claim that there was a Due Process violation stemming from the failure to test certain

1

evidence i.e., certain forensic evidence recovered from the produce cooler. The failure to respond to Defendants' arguments results in a waiver by Plaintiff to those arguments.

Moreover, Plaintiff's Response in support of his post-deprivation claim pursuant to *Manuel v. City of Joliet, Illinois*, 137 S. Ct. 911 (2017) simply asserts that fabricated evidence through Render was a constitutional violation; however, Render never testified at either criminal trial and the only testimony he did provide was in relation to a grand jury hearing that led to Plaintiff's prosecution for fraudulent concealment of a murder. (Sec. Am. Comp., paras. 62-63). As such, Plaintiff has failed to state a cause of action under *Manuel* and this claim as well as the remaining claims in Plaintiff's Second Amended Complaint should be dismissed for the reasons set forth herein.

## Argument

### I. Plaintiff has failed to address any arguments that the Estate of William Gruenes exists, was properly substituted or that an administrator was appointed for the purpose of proper service.

Plaintiff does not address any of the arguments in Defendants' motion, other than arguing that punitive damages are appropriate once a Special Administrator is appointed. (Plaintiff's Resp., p. 3). However, Plaintiff's partial response ignores the non-existence of an estate, the lack of service on a court ordered representative for the estate, and the untimeliness of claims against William Gruenes. Plaintiff's failure to respond to those specific arguments should result in waiver of any arguments to the contrary. See, *Alioto v. Town of Lisbon,* 651 F.3d 715 (7th Cir. 2011); *County of McHenry v. Insurance Company of the West,* 438 F.3d 813 (7th Cir. 2006)(requiring a finding of waiver any time a non-moving party fails to respond to a motion to dismiss).

Plaintiff has not and cannot assert that he was unaware of Gruenes' passing in January 2003, as it was part of the transcripts in his 2013 criminal proceeding. Furthermore, Plaintiff did not argue that the estate had never been formed by Plaintiff or that there was ever an estate opened when Gruenes passed away in 2003. As such, there is no party that could be identified as "The Estate of

2

William Gruenes" and service of the widow is not appropriate. Plaintiff did not contest any of these arguments, thus this Court should determine as a matter of law that Plaintiff improperly named a non-existent estate, failed to have an administrator appointed, and served the wrong party to effectuate service against a non-existent estate. For these reasons, the claims against the "estate" are improper and service was improper, and this Court should dismiss all of the claims against "The Estate of William Gruenes" with prejudice.

**II. Plaintiff's Response does not warrant the imposition or even the potential imposition of punitive damages against the Estate of William Gruenes.**

Plaintiff does not address the short duration of time between the initiation of the investigation into the disappearance of Brian Carrick to the passing of Officer William Gruenes, which was approximately one month. Plaintiff does not dispute that there is no case law to support the imposition of punitive damages, rather, Plaintiff asserts that Gruenes "alone and with others, caused an innocent man to be pursued, arrested, prosecuted, convicted and incarcerated." (Resp., p. 3). This conclusory allegation does not account for the passing of William Gruenes or that he could not have had any part in the charges, grand jury hearings, prosecution, conviction or incarceration that occurred years later at the earliest but almost a decade after his passing. Plaintiff has cited no case law to the contrary and the case of *Kahlily v. Francis*, 08 C 1515, 2008 U.S. Dist. LEXIS 101745, at * 18 (N.D. Ill. Dec. 16, 2008)(Kendall, J.), is instructive. There, the officer was alive at the time the suit was filed. *Id*. The same reasoning that the district court used to dismiss the punitive damages against the estate of the deceased Chicago Police Officer Francis is even more applicable here, where William Gruenes passed away more than 15 years before he was named in a lawsuit. Therefore, punitive damages should be stricken as they relate to William Gruenes' purported estate.

**III. Plaintiff has not addressed any arguments related to the failure to test certain evidence and has otherwise failed to state a Cause of Action for Due Process Violations as to any *Brady* Violations against these officers.**

3

Plaintiff seems to be abandoning any claim predicated upon the failure to test certain forensic evidence recovered from the grocery store. Plaintiff has focused on the underwear and a videotape that was reportedly secured by a MIAT officer and provided to some officer in Johnsburg. Plaintiff has not identified whom was provided the video at Johnsburg. We cannot attribute that alleged bad act on one of these officers without any such allegation that they received and failed to inventory the video. Next, Plaintiff ignores the allegations that other evidence of Rob Render was available for testing, assuming *arguendo* that the toddler's underwear would have fit him. Plaintiff contends that "[n]o comparable evidence existed." (Resp., p. 6). It defies logic that the pants, which would have covered the undergarments of Render, would not have contained the necessary DNA for testing. For Plaintiff's theory that there was no other comparable evidence to test for DNA to hold water, Plaintiff would have to establish that blood would have gone through or around the pants worn by Render (which are available for testing) and solely ended up on Render's underwear. Such a position is non-sensical and ignores the availability of the other clothing that would allegedly contain the "exculpatory" DNA evidence. Ultimately, Plaintiff has failed to state a cause of action upon which relief can be granted.

### IV. Plaintiff's Response does not negate the fact that Rob Render's testimony was not used during the criminal trial.

It is undisputed that Rob Render did not testify at either criminal trial; however, Plaintiff argues that his testimony before the Grand Jury on February 15, 2007 furthered the prosecution. (Resp., pp. 7-8). This argument is misplaced because Plaintiff's allegations refute that said testimony was used for his murder prosecution. Rather, the Second Amended Complaint makes it clear that the February 15, 2007 testimony of Render led to the indictment of Plaintiff for concealment of a homicide on July 17, 2008. See, Plaintiff's Sec. Am. Comp., paras. 62-63. Additionally, Render was indicted for the same offense. *Id*. at 64. Plaintiff's allegations also make it clear that he was arrested on February 25, 2010 and indicted by a Grand Jury. *Id*. at 5. There is no allegation that

4

Robert Render testified at the Grand Jury that led to Plaintiff's indictment for murder or that his 2007 Grand Jury testimony for another crime was used to indict Plaintiff in 2010. Simply put, there is no allegation to support a claim that Render's testimony was used to advance any prosecution of Plaintiff for murder and the statute of limitations has long run on any claim stemming from Plaintiff's prosecution for concealment of a homicide, because those claims are time barred. To the extent Plaintiff's fabrication claim rests with Robert Render then that claim is not actionable based upon the allegations set forth in the Second Amended Complaint. See, *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014).

**V.       Plaintiff's Response does not warrant a denial of the motion to dismiss the *Brady* claims related to the alleged witness statements to the police.**

Plaintiff has admitted that he is not requiring a verbatim account of what a witness has said, but rather only exculpatory evidence. Plaintiff seems to avoid any discussion that prior allegations that the witness reports did not exist (Doc. No. 36, paras. 97-109) and now focuses on very specific statements that were allegedly made a decade before Plaintiff's trial. In doing so, Plaintiff reiterates the alleged destruction of underwear, alleged destruction of a video, and an alleged undocumented interview with Kepple. (Resp., p. 9-10). However, Defendants arguments as to these issues relate to the allegedly unreported additional statements made to the respective officers.

Plaintiff seems to side step this Court's prior opinion that information had to be unavailable to a reasonable diligent defendant and seems to argue that there was no way for the criminal defense attorneys to obtain this information. Plaintiff relies on the case of *Boss v. Pierce*, 263 F. 3d 734, 744 (7th Cir. 2001) for the proposition that the information allegedly conveyed from the known witnesses and Plaintiff's co-workers, could not have been known to him, even upon the exercise of reasonable diligence. The facts presented in *Boss* were very different. In *Boss*, the prosecution gave the criminal defendant on the last day of trial an investigative report summarizing an interview of a witness conducted four days before the trial began. *Id.* at 738-39. Also, another person admitted to the murder

5

that Boss was charged for. *Id*. The criminal defendant sought a continuance of the trial, which was denied. *Id*. Ultimately, the Seventh Circuit determined the failure to provide the report was a *Brady* violation.

Here, the facts, even as alleged, are vastly different. The reports in question were created almost a decade before the trial of Casciaro. The reports were available to Plaintiff during his entire prosecution, contrary to the original Complaint. Lastly, there are no statements of Vallone, Kepple, or Gebauer, such as those in *Boss,* in which a party claims responsibility for the crime at issue. Casciaro has not argued that he has conducted any due diligence or how the witnesses, all of whom worked for his family's business, were somehow unavailable to provide the alleged information to him. Plaintiff is seeking a heightened standard for police reporting that does not exist. As such, Plaintiff has not pled a cause of action for a *Brady* violation related to the police reports for the alleged statements of these witnesses. Therefore, Casciaro's Due Process claim should be dismissed as it relates to these witnesses and Count I must be dismissed as to all of the Johnsburg Defendants, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

**VI. Plaintiff has failed to state a cause of action for a Fourth Amendment, Post-Charging Deprivation of Liberty.**

Plaintiff's Response in support of Count II of Plaintiff's Second Amended Complaint demonstrates the overbreadth of Plaintiff's claims and the complete overreaching by Casciaro's allegations. First and foremost, there is not one allegation that can be made with a straight face that Gruenes or any of the Johnsburg defendants did anything to fabricate evidence, either pre or post charging. The closest Casciaro comes to allegations that rise to that level is that Chief Von Allmen tried to get Rob Render to implicate Plaintiff. However, the only testimony from Render was used during Plaintiff's criminal prosecution for another crime and three years before (on February 15, 2007) Casciaro was charged with murder. It is undisputed that Rob Render did not testify in the criminal trials and provided no testimony after Plaintiff was charged. Thus, there are no allegations

6

of "fabricated evidence" concocted by these officers at all. However, assuming *arguendo* the allegations were true about Robert Render, it is difficult to fathom how any Johnsburg officer could be liable, especially Gruenes who passed away before any of the alleged statements were fabricated or Rydberg who was not present and did not participate in any of the meetings with Render. Even this iteration of the Complaint is devoid of fabricated evidence, which sounds the death knell for Casciaro's post-charging deprivation claims. See *Watkins v. Village of Maywood*, 17 C 8750 (N.D. Ill. April 20, 2018); *Carter v. City of Chicago, et al.*, 17 C 7241, (N.D. Ill. April 10, 2018). Therefore, the claims in Count II should be dismissed with prejudice.

### VII. Count IV Must Be Dismissed Because Plaintiff Fails to Plead a Cause of Action for Conspiracy.

Plaintiff attempts to advance the theory that the McHenry County Major Investigation Assistance Team is an inter-municipal task force and thus, the Defendant Officers participated in this investigation as a unit. (Resp., p. 14). There are no allegations that the Johnsburg Officers were members of this task force, so Plaintiff's arguments that non-members of the task force can be lumped together are without legal support. The Second Amended Complaint alleges that Brogan was acting in his capacity as a McHenry Police Officer. (Sec. Am. Comp., para. 28). Contrary to Plaintiff's Response, the named defendant officers worked for separate agencies and the Johnsburg defendants cannot be grouped together, as if all of the officers were in the same police agency.

Plaintiff cites to the case of *Geinosky v. City of Chicago*, 675 F. 3d 743, 749 (7th Cir. 2012) to support his contentions that he does not have to spell out specific individual conduct, but can allege a general pattern of behavior. (Resp., p. 15). The case of *Geinosky* only involved police officers from the Chicago Police Department and Casciaro has hardly alleged a "pattern of conduct". Plaintiff has not pleaded the necessary elements for a conspiracy. By way of example and highlighting the obvious, there are no allegations how Gruenes participated in or acquiesced to any conduct after his death. Plaintiff's insistence on moving forward with the claims without acknowledging these deficiencies

speaks volumes to the merit of the arguments. Thus, Count IV must be dismissed as to Von Allmen, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

**VIII. Count VI Must Be Dismissed Because Plaintiff Fails to Plead a Cause of Action for Malicious Prosecution.**

Plaintiff's Response acknowledges that a Grand Jury indictment can break the chain of causation for a malicious prosecution "absent an allegation of pressure of influence exerted by the police officers or knowing misstatements to the prosecutor." (Resp. p. 16)(citation omitted). Plaintiff admits that the officers did not testify before the Grand Jury, but rather argues that the defendant officers influenced the prosecutors by concealing evidence, compounded with the prejudicial effects of Render's February 15, 2007 Grand Jury testimony. *Id*. However, Plaintiff's own allegations make it clear that Render testified before the Grand Jury that indicted Plaintiff for fraudulent concealment of a homicide and not murder, the criminal case that gives rise to this cause of action. (See, Plaintiff's Sec. Am. Comp., paras. 62-63).

The Complaint is devoid of any misstatements by the defendant officers and Plaintiff equates the alleged incomplete reports with a "knowing misstatement" by the officers. (Resp., p. 16). Plaintiff maintains that had the officers disclosed the evidence that inculpated Render, Jr. then "Render Jr.'s grand jury testimony could not have contributed to Plaintiff's indictment." *Id*. However, Plaintiff's assertions are misplaced because the Second Amended Complaint makes it clear that Render's Grand Jury testimony led to Plaintiff's indictment for another crime and not murder. Thus, there are no applicable exceptions to the Seventh Circuit's precedent that an indictment breaks the chain of causation for a malicious prosecution claim. See, *Colbert v. City of Chicago*, 851 F. 3d 649, 655 (7th Cir. 2017)(quoting *Reed v. City of Chi.,* 77 F.3d 1049, 1053 (7th Cir. 1996) (emphasis added). Plaintiff's Response does not point to any allegations from the pleadings that there were "'some postarrest action which influenced the prosecutor's decision to indict.'" *Id.* (citation omitted). The only post-arrest statements by Render were taken by the McHenry County State's Attorney and the

8

FBI, without any Defendant Officer being present. (Sec. Am. Comp., paras., 68-69). Plaintiff claims that generally a malicious prosecution claim can stand at the pleading stage where it is alleged the officer played a significant role in the prosecution of Plaintiff; however, Plaintiff's Second Amended Complaint and the Response belies any such notion or that any of the alleged transgressions of the defendant officers played any role in Plaintiff's 2010 indictment for murder. Therefore, Count VI must be dismissed as to the Johnsburg defendants.

## IX. **Plaintiff fails to state a cause of action for Supervisory Liability.**

Plaintiff's Response only reaffirms Defendants' arguments that Plaintiff has failed to state a cause of action for Supervisory Liability. As to Gruenes, Plaintiff argues that it was the conduct of Gruenes that gives rise to the supervisory claims against him. Specifically, Plaintiff points to the allegations that "he omitted Anthony Gebauer's statements" and he omitted the statements of Jacob Kepple". (Resp., p. 19). These allegations are not in Gruenes' supervisory capacity, but rather his capacity as an individual officer.

Next, Plaintiff admits that Rydberg was not a supervisor at the time of charging, but that he caused the prosecution of Plaintiff because Rydberg did not request the testing of the clothing of Robert Render, Jr. and obstructed the forensic testing of the crime scene and did not obtain phone records. *Id*. Again, these allegations, including the testing of forensic evidence is not a constitutional violation, nor did Plaintiff even respond to those arguments of the Motion to Dismiss. If there is no underlying constitutional violation, then how can a supervisor be liable for such conduct.

Plaintiff also argues in his Response that Chief Von Allmen can be liable as a supervisor because he participated in the alleged conduct. However, Plaintiff misconstrued Defendants' argument in their motion to dismiss because Defendants did not argue that it was necessary for Plaintiff to name one of Von Allmen's subordinates to establish liability, but rather Plaintiff had to identify the unconstitutional acts of Von Allmen's subordinates in order for supervisory liability to

9

attach to Von Allmen. Plaintiff argues that a report involving an interview of Robert Render from a December 2003 interview of Render was approved by Von Allmen. (Sec. Am. Comp., paras. 29-61)(Resp., p. 21). It is unclear what the alleged violation claimed is as a result of this report, but Robert Render did not provide testimony in the Grand Jury that led to Plaintiff's indictment for murder or at the murder trials. Plaintiff alleges that it took 7 months for the report to be completed, but that still left Plaintiff six years or so to review the reports. It is difficult to fathom how this claim can be the basis of supervisory liability against Von Allmen, when the true nature of the claims, albeit disputed in fact and law, are against Von Allmen for his individual conduct. Plaintiff also does not address the issue of Von Allmen's obligation to supervise other officers from other police agencies. Under such circumstances, Plaintiff should not be permitted to simply lump the defendant officers together and simply assert that the supervisors had the duty, or even opportunity, to supervise other officers from outside agencies. The allegations as set forth in the Second Amended Complaint are conclusory and hollow. Thus, Plaintiff's claims in Count V should be dismissed with prejudice.

**X.** **Statute of limitations as to Plaintiff's state law claims fail as to William Gruenes and Kenneth Rydberg.**

Plaintiff did not respond to Defendants' arguments as to the statute of limitations barring the claims against Rydberg and Gruenes. Therefore, those arguments are waived and Plaintiff's state law claims should be dismissed against Gruenes and Rydberg with prejudice.

**XI.** **Plaintiff does not allege that Von Allmen engaged in extreme and outrageous conduct that is necessary for a claim of intentional infliction of emotional distress.**

Plaintiff is mistaken that this Court can simply rely upon its prior decision to support the claim of IIED as to Chief Von Allmen. Plaintiff did not address and clearly agrees that any state law claims against Gruenes and Rydberg are untimely, so this Reply will focus on Chief Von Allmen's alleged conduct. Contrary to Plaintiff's arguments, the allegations are not the "same". Plaintiff previously argued that there were no reports created, but now faced with the inaccuracy of those allegations has

now switched course and alleged that the reports were prepared but were not complete. Also, the original complaint claimed that Von Allmen was friends with Renders father, but that too has been softened to allege that Von Allmen was suspected of have a friendship with Rob Render's father. That lead was investigated and ruled out. In addition, the basis for the other state law claims against Von Allmen are not actionable for the reasons stated herein. Even construing the allegations liberally, the conduct does not rise to the level of extreme and outrageous and Count VII must be dismissed with prejudice.

**XII. The Second Amended Complaint fails to state a cause of action for Failure to Intervene.**

Plaintiff's Response concerning the failure to intervene claim concedes that Gruenes could not have intervened, assuming that there was some constitutional violation against Plaintiff. (Resp., p. 23). This admission is significant and establishes that there can be no such claim against Gruenes. In the same vein, if he could not have intervened, then how can there be supervisory liability against him. Clearly, the duality of Plaintiff's arguments cannot be reconciled. The claims cannot stand against the two remaining Johnsburg officers. Defendants have demonstrated that Rydberg's conduct, including the failure to test DNA evidence, was appropriate under the law, so there would have been no basis for Von Allmen to intervene. By the same token, there are no allegations that can support that Rydberg knew and could have intervened in the alleged (disputed) conduct of Von Allmen. There was no allegation that Rydberg was present for or could have known what transpired at certain witness interviews. Ultimately, the allegations are not sufficient to demonstrate that either of the remaining Johnsburg officers were aware of any unconstitutional conduct or had a realistic opportunity to prevent it. *See, Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Thus, Count III of the Second Amended Complaint fails to state a cause of action and should be dismissed.

### XIII. The Johnsburg Defendants are entitled to Qualified Immunity.

There is no dispute that the officers were not entitled to provide fabricated evidence. However, as demonstrated in this Reply and the Motion to Dismiss, there was no fabricated evidence, nor was any of the alleged fabricated evidence used at any of Plaintiff's proceedings for murder. Plaintiff's Response, taken in totality, is seeking a standard that seeks nearly verbatim recitations of witness interviews, assuming the individuals told the officers what was alleged to have occurred. Unlike this Court's prior opinion about purported *Brady* violations upon the lack of reports, here what is allegedly exculpatory is a matter of interpretation and discretion. There is no allegation that any of the interviewees said that there was another perpetrator that was known, but information that Casciaro now claims was exculpatory. The alleged exculpatory evidence does not rise to the level of a *Brady* violation, nor has Plaintiff cited to one case in the qualified immunity argument of the Reply supporting established law on this point. Therefore, the officers should be afforded qualified immunity under the circumstances due to the strict standard Plaintiff is seeking to apply to officer witness encounters and report writing. Thus, this Court should grant this motion to dismiss as to all individual federal claims.

### XIV. Counts VI and VII Must Be Dismissed Because Plaintiff's Underlying Cause of Action Fails.

For the reasons cited herein and in the Motion to Dismiss, Plaintiff's underlying claims fail. Therefore, Counts VI and VII of the Second Amended Complaint should be dismissed, with prejudice, as to the City of Johnsburg, pursuant to Fed. R. Civ. P. 12(b)(6).

WHEREFORE, Defendants, CITY OF JOHNSBURG and Officer KEITH VON ALLMEN, KENNETH RYDBERG, and THE ESTATE OF WILLIAM GRUENES respectfully request this Honorable Court grant their Motion, dismiss the Second Amended Complaint, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(4) and (6), and order any and all such further relief as is equitable and just.

                Respectfully submitted,

            By: <u>/s/Dominick L. Lanzito</u>
               One of the Attorneys for Defendants

Dominick L. Lanzito
Paul A. O'Grady
Peterson, Johnson & Murray Chicago, LLC
200 West Adams, Suite 2125
Chicago, IL. 60606
(312) 782-7150
dlanzito@pjmchicago.com