## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| Mario Casciaro, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 CV 50094 |
| | ) | |
| vs. | ) | |
| | ) | |
| Keith Von Allmen, et al., | ) | Judge Philip G. Reinhard |
| | ) | |
| Defendants. | ) | |

### ORDER

For the reasons set forth below, defendants' motions to dismiss plaintiff's second amended complaint [73]; [82] are granted in part and denied in part. The parties are directed to contact Magistrate Judge Johnston within 30 days to discuss whether a settlement conference or mediation would be beneficial at this time.

### STATEMENT - OPINION

On March 21, 2018, plaintiff, Mario Casciaro, brought his second amended complaint ("complaint") against defendants Keith Von Allmen ("Von Allmen"), Kenneth Rydberg ("Rydberg"), Unknown City of Johnsburg police officers, William J. Brogan ("Brogan"), the Estate of William Gruenes ("Estate of Gruenes"), the City of Johnsburg ("Johnsburg"), and the City of McHenry ("McHenry") [61]. This case arises from the disappearance and presumed murder of Brian Carrick ("Carrick"). During the investigation of Carrick's disappearance, plaintiff was charged with perjury and was acquitted at trial. Plaintiff was later charged with Carrick's murder and after his first trial ended in a hung jury, he was tried again and convicted. He was sentenced to 26 years in the Illinois Department of Corrections. On September 17, 2015, plaintiff's conviction was reversed by the Illinois Appellate Court, *People v. Casciaro*, 2015 Ill. App. (2nd) 131291 (2015). On March 30, 2016, the Illinois Supreme Court denied the state's petition for leave to appeal.

Defendants Von Allmen and Johnsburg moved to dismiss plaintiff's first amended complaint [41]. The court denied defendants' motion on November 22, 2017 [49].

Plaintiff's second amended complaint alleges, pursuant to 42 U.S.C. § 1983, a violation of due process (Count I), post-charging deprivation of liberty (Count II), failure to intervene (Count III), conspiracy (Count IV), and supervisory liability (Count V). Plaintiff also brings state law claims of malicious prosecution (Count VI), intentional infliction of emotional distress (Count VII), conspiracy (Count VIII), respondeat superior (Counts IX and XI), and indemnification (Counts X and XII). Defendants Von Allmen, Rydberg, the Estate of Gruenes, and Johnsburg move to dismiss [82] pursuant to FED. R. CIV. P. 12(b)(4) and (6). Defendants Brogan and McHenry move to dismiss [73] pursuant to FED. R. CIV. P. 12(b)(6). Defendants' motions are fully briefed and ripe for the court's review.

When evaluating a Rule 12 (b)(6) motion to dismiss, the court must "accept[] all well-pleaded facts as true and draw[] all reasonable inferences in favor of the . . . non-moving parties." *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016) (internal citations omitted). "A Rule 12(b)(6) motion challenges the sufficiency of the complaint itself." *Id.* "To state a claim, a complaint must first provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (citing FED. R. CIV. P. 8(a)(2)). "The statement of the claim must sufficiently give 'fair notice of what the ... claim is and the grounds upon which it rests' to the defendants." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To state a claim for relief, a complaint must provide more than 'abstract recitations of the elements of a cause of action or conclusory legal statements.' *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Instead, a plausible claim must include 'factual content' sufficient to allow the court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)." *Charleston v. Board of Trustees of the University of Illinois at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013). A motion to dismiss pursuant to Rule 12(b)(4) concerns whether a defendant was sufficiently served with process. FED. R. CIV. P. 12(b)(4).

A.   **FACTUAL BACKGROUND**

The court recites the following factual background, based on the allegations in plaintiff's complaint [61], to the extent it is relevant to defendants' motion to dismiss.

Carrick went missing on December 20, 2002, and has not been seen since. He is presumed to have been murdered. In December of 2002, Carrick worked at Val's Finer Foods ("Val's") in Johnsburg, IL. Val's is co-owned by plaintiff's father and plaintiff was an employee of the store (apparently the "unofficial" manager of the stock boys) at all relevant times.[1] After Carrick's family reported him missing, Johnsburg police office Von Allmen was assigned the investigation. Witnesses stated that Carrick was not working at Val's on December 20 but came into the store at 6:45 p.m. He was last seen in the back hallway leading to the produce cooler. On December 21, 2002, Von Allmen and (former Johnsburg police officer) William Gruenes ("Gruenes")[2] interviewed witnesses at Val's, including plaintiff and Anthony Gebauer ("Gebauer"). Gebauer told Von Allmen and Gruenes that Val's employee Robert Render, Jr. ("Render") told him that there had been a fight in the store's produce cooler on the night of December 20. Render told Gebauer he was going to "jump" Carrick and he had a weapon. Render was angry at Carrick over a debt. Gruenes did not include Gebauer's statement in his report and Von Allmen did not correct the report to reflect these statements. Brogan approved Gruenes's report in January of 2003. Since these statements were not disclosed to plaintiff, plaintiff could not use them at his trial to show Render's motive and opportunity to murder Carrick. On the same day, Von Allmen and Gruenes interviewed Val's employee Jacob Kepple. Kepple told the officers that Render owed Carrick money and that if Carrick did not get paid, Carrick planned to beat up Render. Kepple also said that he was told that on December 20 Render repeatedly asked for the key to the southeast exit door so that he could take the garbage out. Von Allmen and Gruenes prepared a report that did not include the details of their interview with Kepple nor did they disclose these details to plaintiff prior to plaintiff's trial. Some time after Kepple's interview, Kepple contacted the Johnsburg Police Department and told someone he learned that Von Allmen and Render's father were friends. No report was made of this information depriving plaintiff of the opportunity to investigate. Kepple was again interviewed in January of 2004.

---

[1]   This fact has been taken from the September 17, 2015, Illinois Appellate Court opinion.

[2]   William Gruenes died in a car accident on January 24, 2003.

2

At that interview, Rydberg allegedly asked Kepple to state that he (Kepple) saw Carrick with Val's employee Shane Lamb ("Lamb") by the produce cooler. Kepple refused to make such a statement, declaring it untrue. Rydberg did not document this interview.

Von Allmen also interviewed Lorenzo Vallone ("Vallone"), a supervisor at Val's. Vallone told Von Allmen that on December 20 before 7:00 p.m., he gave the key that opened the padlock on the southeast exit door of Val's to Render. Later that same evening, Vallone discovered the key in the padlock and removed it. Von Allmen did not prepare a report on this interview, nor was the content of this interview disclosed to plaintiff.

On December 22, Render quit his job at Val's. On December 26, Von Allmen interviewed Render. Render told Von Allmen that Carrick was selling drugs to make friends and that he was getting his drugs from Lamb. Render also told Von Allen that plaintiff was a "bad" person. On the same day, officers pulled trash cans at Render's home and found men's "Fruit of the Loom" underwear and t-shirts in the trash. No DNA testing was performed on the clothes. On December 28, Render's father reported that Render ran away from home. On December 29, officers located Render and arrested him for possession of drug paraphernalia. One month later, Render provided a DNA sample.

The forensic evidence at Val's revealed blood spatter consisting of Carrick's blood on the walls in the hallway east of the produce cooler. There were also droplets of Carrick's blood in the produce cooler on boxes and on the floor. His blood was also found on cardboard inside the dumpster outside and next to the building. Render's blood was detected on a door jamb in the cooler, on the southeast door of the store, and on the top of his shoes. According to plaintiff's complaint, Carrick's body was removed from the store in a garbage can, which was missing after December 20.

On April 4, 2003, Gebauer was working on the plumbing in the men's bathroom at Val's. During the course of his work, Gebauer went into the women's bathroom and removed ceiling tiles. In doing so, a pair of blood soaked underwear fell from the ceiling and onto the floor. That same day, Gebauer placed the underwear in a paper bag and turned it over to the Johnsburg police. According to plaintiff, the underwear was a boy's size and could have fit Render but could not have fit plaintiff or Lamb. The underwear was apparently thrown away on April 12, 2003, by Von Allmen. However, because plaintiff never received any information about Von Allmen's observations of the underwear and because the underwear was destroyed, plaintiff was unable to use it at his trial.

In September of 2003, Render was interviewed by a McHenry County detective and a special agent with the FBI. At that interview Render was largely uncooperative but admitted that prior to Carrick's disappearance he owed Carrick money from a drug sale. Render was interviewed again in December of 2003. In that interview, Render stated that on December 20, 2002, Carrick called him and asked for the money Render owed him for the drugs. At that time, Render told Carrick he could not pay him. Sometime after July 18, 2008, Render was interviewed again at the Lake County Jail. At that interview, Render allegedly stated on the day of Carrick's disappearance he saw Carrick by the produce cooler and later saw plaintiff arguing with Carrick. At some point he also saw Lamb outside the cooler with a knife in his hand. When Render asked Lamb what he was doing, Lamb cut him with the knife. Render then went into the bathroom to bandaged his cut arm with toilet paper. Render then went back to the cooler and saw plaintiff taking out a garbage can and assisted him. Render stated he saw legs and feet in the garbage can that "theoretically" could have belonged to Carrick. At a February 2012 interview with Render at a drug treatment facility, Render told an assistant state's attorney and state's attorney's investigator that on December 20, he saw plaintiff, Lamb and Carrick in the produce cooler. He then saw

3

Lamb push Carrick in the chest and saw Carrick fall backward striking his head on metal. Plaintiff then summoned Render to help him in emptying the garbage can. In April of 2012, Render recanted these statements.

Neither Von Allmen nor Rydberg submitted or caused to be submitted for testing certain forensic evidence collected from the crime scene, including blood spots from the hallway and exit door, fingerprints, palm prints, hair, and Render's clothing. According to plaintiff, testing on these items would have led to forensic results that would have been exculpatory to plaintiff.

Plaintiff was charged with felony murder predicated on the crime of intimidation. At plaintiff's trial, the state theorized that Lamb was the instrument of plaintiff's intimidation of Carrick. Lamb, who had been granted immunity by the state, testified plaintiff had called him on December 20, 2002, and asked him to come to Val's and talk to Carrick about money Carrick owed plaintiff. When Lamb arrived at Val's, Lamb found plaintiff and Carrick arguing about the money owed. Lamb then started arguing with Carrick, lost his temper and hit Carrick. According to Lamb, plaintiff then told Lamb to leave the store. Render did not testify at either of plaintiff's trials and apparently died of a drug overdose on May 17, 2012. On April 2, 2013, plaintiff was convicted of felony murder. He was sentenced to 26 years in the Illinois Department of Corrections. On September 17, 2015, plaintiff's conviction was reversed by the Illinois Appellate Court and plaintiff was released from incarceration on September 23, 2015. On March 30, 2016, the Illinois Supreme Court denied the state's petition for leave to appeal.

**B.      ANALYSIS**

    **1.      Plaintiff's claims against the Estate of William Gruenes.**

In his second amended complaint, plaintiff has named the Estate of William Gruenes. As noted above, Gruenes was a police officer with the Johnsburg police department and was involved in the investigation of the disappearance of Carrick for approximately one month until Gruenes' death in January of 2003. Plaintiff has filed a return of service of summons and complaint advising that his investigator served the Estate of Williams Gruenes in care of Misty Gruenes on March 22, 2018. *See* [62]. Defendants Johnsburg, Von Allmen, Rydberg, and Estate of Gruenes (the "Johnsburg defendants") move to dismiss the Estate of Gruenes pursuant to FED. R. CIV. P. 12(b)(4) because there is no estate on behalf of decedent Gruenes. The Johnsburg defendants argue plaintiff has not opened an estate, nor moved to appoint a representative in this matter pursuant to FED. R. CIV. P. 25. They further argue that even if plaintiff properly brought claims against an estate, any request for punitive damages should be stricken due to the fact that Gruenes died within a month of the inception of the investigation and, therefore, no reasonable jury could find that Gruenes' conduct rose to the level required to impose punitive damages. In response, plaintiff argues that once a special administrator is appointed, punitive damages will be appropriate. Plaintiff does not address the Johnsburg defendants' argument that no estate has been opened on behalf of decedent Gruenes.

It is undisputed that plaintiff has brought claims against a legally non-existed party. "[A] suit brought against a legally non-existent party is void *ab initio* and the summons served upon the non-existent party does not give the court jurisdiction." *Johnson v. Psaltakis*, No. 03 C 9427, 2006 WL 2290985 at * 2 (N.D. Ill. Aug. 3, 2006) (citing *Theodorakakis v. Kogut*, 551 N.E.2d 261, 263 (Ill.App.Ct. 1990)). Additionally, FED. R. CIV. P. 25 does not save plaintiff's claims against the purported estate. Rule 25 governs the substitution of parties. It provides, in relevant part, "If a party dies and the claim is not extinguished, the court may order substitution of parties." FED. R. CIV. P. 25(a)(1). However,

"[w]hen a person for whom substitution is sought has died before being named a party, substitution is not allowed." *Stanley v. Kenney*, No. 87 C 10822, 1988 WL 48240 at * 1 (N.D. Ill. May 9, 1988) (citing *Mizukami v. Buras*, 419 F.2d 1319, 1320 (5th Cir. 1969)).

The Estate of William Gruenes cannot be named as a party because it does not exist. Additionally, a "party" on behalf of Gruenes cannot be substituted in this litigation because Gruenes died 15 years before being named in this suit. Moreover, the court need not analyze whether or not punitive damages may be assessed against an estate, as briefed by the parties, because that issue is not properly before the court. Because there is no Estate of William Gruenes, all claims brought against it are dismissed.[3]

### 2. Violation of due process (Count I) against individual defendants.

**Johnsburg defendants (Rydberg, Von Allmen)**

The Johnsburg defendants argue in their motion to dismiss that plaintiff has failed to set forth a plausible due process claim (1) based on a failure to test certain evidence and the disposal of the underwear, and (2) for any *Brady* violations because Render did not testify at either criminal trial, and because plaintiff has failed to allege that evidence was suppressed or that the allegedly suppressed evidence resulted in prejudice.

First, defendants claim that plaintiff's allegations regarding the "incomplete criminal investigation" are not actionable. Specifically, they argue there is no viable due process claim for a failure to test certain evidence or the disposal of the underwear discovered by Anthony Gebauer in a bathroom at the grocery store. In response, plaintiff argues he has set forth a viable claim for the destruction of the underwear.

In paragraphs 101 through 113 of the complaint, plaintiff details that on April 4, 2003, Gebauer discovered a pair of blood-soaked underwear in a ceiling tile in a bathroom at Val's. He and his father turned over the underwear to the Johnsburg police department and told the police how he discovered it. While the evidence logs turned over to the defense in the criminal case did not indicate that the underwear had been destroyed, in a November 24, 2014 letter to plaintiff's counsel, it was disclosed that the underwear was thrown away on April 12, 2003 by Von Allmen. Plaintiff alleges that it was reasonable to assume that the underwear was connected to Carrick's disappearance and that because plaintiff never received any information about Von Allmen's observations or destruction of the underwear, and the fact that plaintiff was never able to request testing of the underwear, plaintiff was deprived of the ability to create reasonable doubt among the jury, which would have resulted in his acquittal. Also, in paragraphs 70 through 81 of the complaint, plaintiff complains that Von Allmen and Rydberg failed to submit or cause to be submitted numerous items of evidence for forensic testing, as well as other evidence, which would have led to results that would have been exculpatory to plaintiff.
The complaint further alleges that Von Allmen, as a personal friend of Render's father, diverted the focus of the investigation away from Render and onto plaintiff, despite the facts and evidence demonstrating plaintiff's innocence (*see* paragraphs 121 through 144).

---

[3] For brevity purposes, the order will not address any further arguments concerning defendant Estate of Gruenes.

5

In relation to plaintiff's claims regarding the failure to test certain evidence and the destruction of the underwear as due process violations, defendants rely on the seminal case of *Arizona v. Youngblood* to support their position that "incomplete investigations" are not constitutionally actionable. In *Youngblood*, while the police failed to properly maintain potentially critical evidence, defendant was aware of the evidence and the evidence (such as it was) was made available to Youngblood's expert who declined to perform any tests on the samples. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). The Supreme Court held that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process. *Id*. Citing the holdings in *Youngblood*, defendants note that the untested evidence from the investigation here was available to plaintiff for testing at the time of his criminal trial. Plaintiff counters by arguing that because the underwear was never available for testing, *Youngblood* does not apply. Plaintiff does not address defendants' arguments regarding the other uncollected, untested evidence. Defendants additionally rely on *California v. Trombetta*, 467 U.S. 479 (1984) and *Trombetta*'s three-part test. In *Trombetta*, the Supreme Court rejected the criminal defendant's argument that evidence should have been suppressed on the grounds that the state had failed to preserve it for three reasons: (1) the officers acted with good faith and in accord with their normal practices; (2) the chance that the evidence would have exculpatory value was slim; and (3) the criminal defendants had other means of demonstrating their innocence. *Id*. at 488-89. Ignoring the first two grounds, here defendants focus on prong three - plaintiff had other means of demonstrating his innocence. In support of this argument, defendants point to the fact that plaintiff had Render's clothing, which contained blood for potential testing, and therefore the underwear was not the only evidence that could have been used in plaintiff's defense. Defendants do not address the likelihood that the untested evidence would have had little exculpatory value. And regarding whether defendants acted in bad faith, defendants simply state in their brief that "given the allegations and circumstances" in the complaint, bad faith cannot be inferred. Plaintiff counters by arguing that the underwear had obvious exculpatory value (even without forensic testing), that no comparable evidence existed since the underwear was obtained from the crime scene, and therefore defendants' argument that plaintiff had access to Render's clothing was not enough to satisfy *Trombetta*.

At this stage of the litigation, the court must accept as true the facts pled in the complaint and draw all reasonable inferences in plaintiff's favor. Plaintiff's allegations regarding the untested evidence and the destroyed underwear are sufficient to state a constitutional violation. Plaintiff has alleged sufficient facts which would permit a reasonable inference that the defendants acted in bad faith by failing to submit for testing crime scene evidence and causing the destruction of potentially exculpatory evidence (the underwear). As noted by the Seventh Circuit, "[i]n *Youngblood*, the Supreme Court took for granted that the destruction of...evidence amounted to a denial of due process of law if done in bad faith, though the Court found no constitutional violation where the police were merely negligent." *Armstrong v. Daily*, 786 F.3d 529, 547 (7th Cir. 2015). Viewing this case solely on the complaint, under the holdings of both *Youngblood* and *Trombetta* plaintiff has stated a reasonable claim. Defendants may dispute these allegations and inferences at a later stage of litigation, but they suffice for now.

Next, defendants argue plaintiff's due process claims regarding defendants' coercive tactics in relation to their contacts with Render should be dismissed because plaintiff has failed to show any *Brady* violations. Defendants argue this is so because Render did not testify at either of plaintiff's criminal trials and, therefore, there was no prejudice to plaintiff. Defendants' brief argument relies on *Fields v. Wharrie,* 740 F.3d 1107 (7th Cir. 2014). However, defendants' reliance on *Fields* is narrow. *Fields*' finding that "if the evidence hadn't been used against the defendant, he would not have been harmed by it, and without a harm there is...no tort," *id*. at 1114, is not isolated to only evidence produced at trial. The *Fields* court (citing *Julian v. Hanna*, 732 F.3d 842, 847 (7th Cir. 2013)) held that "the fabrication of

evidence harm[s] [a] defendant before and not just during the trial, [if] it was used to help indict him." *Fields*, 740 F.3d at 1112. Here, defendants' argument that there is no cognizable claim against them regarding Render's (allegedly coerced) statements because Render did not testify at plaintiff's trials, is unpersuasive. Defendants acknowledge in their brief that Render did testify at the grand jury proceedings, but fail to recognize that the holding in *Fields* is not limited to trial testimony. The court finds, at this stage of the proceedings, that plaintiff has sufficiently alleged a due process violation by pleading that Render's testimony before the grand jury was fabricated by defendants who knew at the time of Render's testimony that plaintiff was innocent.

Finally, defendants argue plaintiff has failed to plead a *Brady* violation because he has failed to allege that evidence was suppressed or that the allegedly suppressed evidence resulted in prejudice. Plaintiff's complaint claims that defendants' interviews of Gebauer, Vallone and Kepple, and the reports created therefrom, did not disclose the complete contents of each witness' statements. From this, defendants argue that plaintiff is claiming that the reports did not contain "every piece of information that is claimed to have been conveyed." Plaintiff agrees that defendants are not required to provide "every piece of information" received from the interviews; however, plaintiff argues that they have properly alleged that defendants withheld exculpatory information they were required to disclose. The court need not spend time on this argument. Plaintiff alleges (in paragraphs 82-100 of his complaint) defendants did not disclose exculpatory information to plaintiff. It is well-settled that suppression of evidence favorable to an accused violates due process. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The court does not read plaintiff's complaint to plead that defendants failed to provide "every detail of [the statements]," and therefore, at this stage of the litigation, without the benefit of full discovery, the court cannot say that there was a *Brady* violation.

For the reasons set forth above, the Johnsburg defendants' motion to dismiss Count I of plaintiff's complaint alleging a violation of due process, is denied.

**McHenry defendants (Brogan)**

The McHenry defendants have likewise moved to dismiss plaintiff's due process claim based on plaintiff's failure to sufficiently plead. In his complaint, plaintiff pleads that defendant Brogan approved a report drafted by Gruenes regarding his interview with Gebauer, but failed to correct the report to include additional statements made by Gebauer implicating Render in the murder of Carrick (paragraph 87). Plaintiff also alleges that had these statements been provided to plaintiff, plaintiff would not have been arrested, charged, or prosecuted for the murder (paragraph 86). In addition, defendants also argue that plaintiff has failed to plead facts that demonstrate defendant Brogan was involved in plaintiff's arrest, holding at the police station, or subsequent charging or detainment.

Defendants rely on *Brooks v. Ross* to support their position that a due process claim has been insufficiently alleged. In *Brooks*, plaintiff alleged defendants produced investigative reports, gave interviews, and were present and assisted in interviews. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The Seventh Circuit found these alleged actions to be "just as consistent with lawful conduct as...with wrongdoing," *id.* and, therefore, did not put defendants on notice of what exactly they might have done to violate Brooks' constitutional rights. Here, while the court acknowledges plaintiff has pled very little as against defendant Brogan, the court finds, unlike *Brooks*, enough has been pled to survive dismissal on a Rule 12(b)(6) motion. A failure to include information derived from an interview that could prove to be exculpatory to a criminal defendant cannot, in this court's view, be considered "just as

consistent with lawful conduct as...with wrongdoing." Therefore, defendant Brogan's motion to dismiss Count I of plaintiff's complaint is denied.

### 3. Post-charging deprivation of liberty (Count II) against individual defendants.

**McHenry defendants (Brogan)**

Regarding Count II of plaintiff's complaint (post-charging deprivation of liberty under Section 1983), defendant Brogan argues that the allegations are not sufficiently pled against him because he was not involved in plaintiff's arrest, holding at the police station, or subsequent charging. Defendants cite to *Barrow v. Blouin*, 38 F. Supp. 3d 916 (N.D. Ill. May 7, 2014), and *Carlson v. Bukovic*, 621 F.3d 610 (7th Cir. 2010), for the proposition that a condition precedent when analyzing seizure under the Fourth Amendment is whether the civil defendant had any involvement in the actual arrest and subsequent detention. However, *Barrow* addressed whether or not plaintiff had been seized for purposes of the Fourth Amendment, and *Carlson* analyzed the propriety of submitting to the jury the issue of whether or not plaintiff had been seized by the defendant police officer. *Manuel v. City of Joliet*, __U.S.__, 137 S.Ct. 911 (2017), is instructive on this point. *Manuel* held that the Fourth Amendment protects against unlawful seizure without probable cause throughout a criminal defendant's continued detention. *Id*. at 919-20. Therefore, Brogan could be subject to liability if he "was aware that [plaintiff's] continu[ed] incarceration[] w[as] unsupported." *Hurt v. Wise*, 880 F.3d 831, 843 (7th Cir. 2018). Defendant Brogan provides no support for his position that he had to have been involved in plaintiff's arrest and detention in order to be liable. Plaintiff's allegation that defendant Brogan failed to disclose potentially exculpatory information that was left out of investigative reports (that helped form the basis for plaintiff's eventual arrest), is sufficient at this point to survive a motion to dismiss.

**Johnsburg defendants (Rydberg, Von Allmen)**

The Johnsburg defendants argue that a claim of post-charging deprivation of liberty has not been recognized as a potential cause of action. Citing *Manuel* and *Hurt*, plaintiff disagrees. The Johnsburg defendants further argue that plaintiff's claims may be untimely.

The court agrees with plaintiff that, post-*Manuel*, a cause of action does exist for a claim of post-charging deprivation of liberty, as acknowledged by the Seventh Circuit in *Hurt*. In *Hurt*, the defendant police officers argued they could not have stopped plaintiff's false arrest because they did not arrest him. *Hurt*, 880 F.3d at 843. As noted above from *Hurt*, "*Manuel* held that the Fourth Amendment protects not only against an initial arrest without probable cause, but also continued detention in its absence." *Id.* Plaintiff can viably allege that because each defendant knew of his participation in the creation of false evidence against him, each defendant knew plaintiff's post-charging incarceration was unsupported and any defendant could have stopped it. *See id*. Therefore, the court finds plaintiff has pled a cognizable claim for relief.

Regarding the timeliness of plaintiff's claim for post-charging deprivation of liberty, that determination hinges on which common law tort is most analogous to a Fourth Amendment post-charging deprivation of liberty claim. *Manuel*, 137 S.Ct. at 919. First, there does not appear to be any dispute that the statute of limitations period for a claim under Section 1983 is two years. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Next, while not well-developed in defendants' brief, defendants appear to argue that *if* the court finds that plaintiff's claim is more analogous to a claim for false arrest, plaintiff's claims are

untimely. False arrest claims accrue when the legal process commences. *See Wallace*, 549 U.S. at 389. Here, plaintiff was arrested in February of 2010 and filed his Section 1983 action in March of 2017, well beyond the two-year statute of limitations period. Plaintiff argues the matter is more akin to a malicious prosecution claim, where the claim accrues when the criminal proceedings end in the criminal defendant's favor. *Johnson v. Winstead*, __F.3d. __, 2018 WL 3850480 at *4-5 (7th Cir. 2018). The state's petition for leave to appeal the appellate court's reversal was denied in March of 2016, within the two-year statute of limitations. *See also Heck v. Humphrey*, 512 U.S. 477 (1994) (Section 1983 plaintiff must prove that his conviction has been reversed on direct appeal in order to recover damages for allegedly unconstitutional conviction). While the Supreme Court has left it to the Seventh Circuit to consider this same dispute, in *Manuel* the Supreme Court noted that eight of the ten Courts of Appeal that have recognized a Fourth Amendment claim (like Manuel's and plaintiff's) have "incorporated a 'favorable termination' element and so pegged the statute of limitations to the dismissal of the criminal case." *Manuel*, 137 S.Ct. at 921. Since a cause of action cannot accrue until all elements have occurred, these eight circuits reasoned that a Fourth Amendment continued detention claim does not accrue until the criminal matter is "favorably terminated" for plaintiff. *See Bolden v. City of Chicago*, 293 F. Supp. 3d 772, 782 (N.D. Ill. Dec. 12, 2017). The *Bolden* court held that, under *Manuel*, since the Fourth Amendment applies to continued detentions and no Section 1983 claim disputing the validity of the detention can stand until the detention is terminated in the accused's favor, "it makes sense to hold that a Fourth Amendment claim of this sort does not accrue until favorable termination." *Id*. Defendants takes the position that the court should not find plaintiff's claim analogous to malicious prosecution because malicious prosecution requires an allegation that the criminal matter was based on "fabricated evidence" and plaintiff has failed to claim that defendants fabricated evidence against him. At this stage of the proceedings, as noted above, the court finds that plaintiff has sufficiently pled an allegation that defendants' criminal case against plaintiff was based on fabricated evidence, at least to the extent that Render's statements to the defendants were coerced. The court finds plaintiff's Fourth Amendment post-charging deprivation of liberty claim to be analogous to a claim for malicious prosecution and, therefore, brought within the applicable statute of limitations period. The Johnsburg defendants' motion to dismiss Count II of plaintiff's complaint is denied.

### 4. Conspiracy to deprive constitutional rights (Count IV) against individual defendants.

**Johnsburg defendants (Rydberg, Von Allmen)**
**McHenry defendants (Brogan)**

Defendants allege plaintiff has failed to satisfy the requirements to properly plead a claim for conspiracy. "To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participant(s) in joint activity with the State or its agents." *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). "Vague and conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's burden[.] A complaint must contain factual allegations suggesting that the defendants reached a meeting of the minds." *Evers v. Reak*, 21 F.App'x 447, 450 (7th Cir. 2001) (citing *Amundsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000)). In their brief, defendants simply argue plaintiff failed to specify the conduct of the Johnsburg and the City of McHenry defendants, and did not allege that a meeting of the minds occurred or an agreement was reached between the defendants within the time Gruenes was alive (approximately one month after the beginning of the investigation). As noted, no claim can be established as against Gruenes (*see* 1. above). However, accepting all of plaintiff's facts as true and drawing reasonable

inferences in his favor, the court finds that plaintiff's specific allegations that defendants concealed evidence that inculpated Render and diverted the investigation away from Render are enough to find a conspiracy has been sufficiently pled. The court accepts the allegations that defendants Von Allmen, Rydberg, Brogan, and other unknown Johnsburg police officers participated in the conspiracy and that it has continued from the date of Carrick's disappearance to the present.

Defendant Brogan adds little to the conspiracy argument. Despite Brogan's argument to the contrary, the court finds plaintiff has been "reasonably specific as to time, location, and even scope" in his conspiracy claim. *Piphus v. City of Chicago Police Dept.*, 2013 WL 3975209 at * 7 (N.D. Ill. Aug. 1, 2013). Moreover, the court finds plaintiff's complaint demonstrates a plausible connection between Brogan's participation in the investigation (albeit minor), and the allegations concerning the other officers and their conduct.

As noted in the court's ruling on defendants' motion to dismiss plaintiff's first amended complaint [49], given the fact that plaintiff has sufficiently alleged a constitutional claim under Count I, there is little to be accomplished by dismissing plaintiff's conspiracy claim. Defendants cannot be held liable for conspiring to violate plaintiff's due process rights unless they actually violated his due process rights. *See Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 311-13 (7th Cir. 2010). Defendants' motions to dismiss Count IV of plaintiff's complaint - conspiracy to deprive constitutional rights - is denied.

### 5. Failure to intervene (Count III) against individual defendants.

**Johnsburg defendants (Rydberg, Von Allmen)**
**McHenry defendants (Brogan)**

Next, defendants argue plaintiff's complaint fails to state a cause of action for failure to intervene. Like a constitutional conspiracy claim, a claim of failure to intervene requires plaintiff to show an underlying constitutional violation. *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017). "The failure-to-intervene claim also requires [plaintiff] to prove that the defendant[s] knew of the constitutional violation and that [they] realistically could have prevented it." *Hurt*, 880 F.3d at 842. As noted above, the court has found plaintiff has plausibly pled a constitutional violation. Additionally, the court finds plaintiff has sufficiently pled that the individual defendants (including Brogan) knew of the alleged violations and could have intervened. The court makes no comment on whether plaintiff will be able to adequately develop this claim as the parties proceed through discovery, but at this stage the court finds there are enough allegations in plaintiff's complaint to survive defendants' motion to dismiss.

### 6. Supervisory liability (Count V) against individual defendants.

**Johnsburg defendants (Rydberg, Von Allmen)**
**McHenry defendants (Brogan)**

Defendants Rydberg, Von Allmen, and Brogan move to dismiss plaintiff's supervisory liability claim. Supervisory liability requires a showing that the supervisor was personally involved in the constitutional violation, "which means the supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what he might see." *Carmody v. Board of Trustees of the University of Illinois*, 893 F.3d 397, 403 (7th Cir. 2018) (citation omitted).

Defendant Rydberg argues that because he retired from the Johnsburg police department prior to the charging of plaintiff, no claim for supervisory liability would have accrued as against him. However, plaintiff's complaint alleges Rydberg acted as a supervisor during the investigation of Carrick's disappearance. The complaint also outlines Rydberg's alleged supervisory conduct in the handling of potential forensic evidence (which plaintiff claims could have exonerated him of the crime). While "mere negligence" is not enough to find supervisory liability, *see Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001), plaintiff's complaint alleges more than negligence. Further, the court agrees with plaintiff that Rydberg's retirement is not dispositive of bringing this claim. As to plaintiff's claims against defendant Von Allmen, defendants argue (in their reply brief) that plaintiff's failure to identify the unconstitutional acts of Von Allmen's subordinates dooms his supervisory liability claim. Plaintiff pleads Von Allmen was "at times" acting as a supervisor during the Carrick investigation. Plaintiff's complaint also alleges that Von Allmen approved a report drafted by a (presumed) subordinate regarding the subordinate's interview of Render in December of 2003. Because it is impossible at this stage of the proceedings to definitively determine the propriety of the conduct alleged in the complaint - including the police interviews of Render - the court cannot say that supervisory liability would not attach to Von Allmen. The same can be said of defendant Brogan's argument. Plaintiff has pled that Brogan was "at times" acting as a supervisor and, in that capacity, approved a report that failed to include potentially exculpatory information from a police interview with Render. Defendant Brogan argues this is insufficient, suggesting that plaintiff was required to plead Brogan had "final policy making authority" in order to be liable under a claim of supervisory liability. While minimal, the court finds plaintiff's allegations against defendant Brogan sufficient to survive a motion to dismiss. Additionally, the court is unaware of a requirement that a plaintiff plead a defendant had "final policy making authority" in order to satisfy a pleading standard for a claim of supervisory liability. Finally (and not insignificantly), at this stage of the proceedings, the court has found plaintiff has met the pleading standard to show an underlying alleged constitutional violation against him - a requirement for a claim of supervisory liability. Defendants' motions to dismiss plaintiff's supervisory claim (Count V) are denied.

### 7. Statute of limitations - state law claims (Counts VI, VII, and VIII) against individual defendants.

**Johnsburg defendants (Rydberg)**
**McHenry defendants (Brogan)**

Defendant Rydberg argues plaintiff's state law claims against him (malicious prosecution, intentional infliction of emotional distress, and civil conspiracy) are barred by the statute of limitations. Plaintiff has failed to address this argument in his response brief; therefore, it is waived. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 720-21 (7th Cir. 2011) ("a person waives an argument by failing to make it before the district court"). Waiver aside, the court will address this issue. The court notes that defendant Brogan did not make the argument that the state law claims brought against him are barred by the statute of limitations. However, this court will *sua sponte* include defendant Brogan in this ruling as he is identically situated with defendant Rydberg.

As indicated above, the Illinois Supreme Court denied the state's petition for leave to appeal the appellate court's reversal of plaintiff's conviction and sentence on March 30, 2016. Plaintiff filed his original civil complaint on March 27, 2017 [1]. Defendants Rydberg and Brogan were not named in the original complaint. On March 21, 2018, plaintiff filed his second amended complaint and for the first time named Rydberg and Brogan as defendants [61]. Pursuant to the Illinois Local Governmental and

11

Governmental Employees Tort Immunity Act, civil actions brought against government entities and employees must be brought within one year of the date that the cause of action accrued. 745 ILCS 10/8-101(a). Applying the latest possible date for accrual (March 30, 2016), plaintiff's state claims against Rydberg and Brogan are time barred. However, pursuant to FED. R. CIV. P. 15, an amended pleading may relate back to the date of the original pleading under certain circumstances. Rule 15(c)(1)(C)(ii) allows a new party to be brought in by amendment if the party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." The Seventh Circuit has stated that "the mistake requirement is independent from whether the purported substitute party knew that action would be brought against him." *King v. One Unknown Federal Correctional Officer*, 201 F.3d 910, 914 (7th Cir. 2000). And as noted by defendant Rydberg, "[i]t is the plaintiff's responsibility to determine the proper party to sue and to do so before the statute of limitations expires." *Hall v. Norfolk Southern Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006). Defendants Rydberg and Brogan are not named in plaintiff's original complaint nor does the court find in the record before it any participation by Rydberg or Brogan in plaintiff's criminal proceedings. The court finds relation back is not applicable. The court grants defendant Rydberg's motion to dismiss him from plaintiff's state law claims of malicious prosecution (Count VI), intentional infliction of emotional distress (Count VII), and civil conspiracy (Count VIII). Additionally, the court on its own motion dismisses defendant Brogan from the same state law claims.

### 8. Malicious prosecution - state law claim (Count VI) against individual Johnsburg defendant Von Allmen.

Defendant Von Allmen brings a motion to dismiss plaintiff's state law malicious prosecution claim.[4] To establish a claim for malicious prosecution under Illinois law, plaintiff must establish "(1) commencement or continuation of an original proceeding; (2) termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages." *Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2016) (citing *Sang Ken Kim v. City of Chicago*, 368 Ill.App.3d 648 (2006)).

Defendant Von Allmen relies on *Colbert v. City of Chicago*, 851 F.3d 649 (7th Cir. 2017), to support his argument. In *Colbert*, the Seventh Circuit held "the chain of causation [between a wrongful arrest and a malicious prosecution] is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements by the officers to the prosecutor." *Id*. at 655 (citation and emphasis omitted). *Colbert* further holds that a plaintiff must show "some postarrest action which influenced the prosecution's decision to indict." *Id*. However, "the chain of causation is broken only if the prosecutor's decision is completely independent of any action on the part of the individual whom the plaintiff is trying to hold liable." *Rivera v. Lake County*, 974 F. Supp. 2d 1179, 1191 (N.D. Ill. Sept. 26, 2013) (citing *Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir. 1988)). Plaintiff responds by arguing he has adequately alleged that Von Allmen concealed evidence that was inculpatory to Render and exculpatory to plaintiff which, therefore, influenced the prosecutor's decision to indict plaintiff. Had Von Allmen disclosed the concealed evidence to the prosecutors, argues plaintiff, a question of probable cause would have existed to indict plaintiff. The court must draw these inferences

---

[4] The court denied defendant Von Allmen's motion to dismiss plaintiff's state law malicious prosecution claim in his previously filed motion to dismiss plaintiff's first amended complaint; however, plaintiff has now pled new and additional allegations and, therefore, defendant's arguments for dismissal are different.

from plaintiff's allegations in plaintiff's favor at this stage of the litigation. Therefore, defendant Von Allmen's motion to dismiss the state law malicious prosecution claim against him is denied.

      **9.**      **Intentional infliction of emotional distress (Count VII) against individual Johnsburg defendant Von Allmen.**

To state a claim for state law intentional infliction of emotional distress, plaintiff must plead that "the conduct involved...be truly extreme and outrageous, [that] the actor must either intend [or know there is a probability] that his conduct inflict severe emotional distress, and [that] the conduct must in fact cause severe emotional distress." *Cairel*, 821 F.3d at 835. Defendant Von Allmen argues his alleged conduct was not extreme and outrageous and, therefore, no liability should attach. The court has previously ruled (in defendants' motion to dismiss plaintiff's first amended complaint) that the allegations of Von Allmen's conduct are sufficient to survive the motion to dismiss as to this claim. *See Gonzalez v. City of Waukegan*, No. 16 C 2906, 2016 WL 7451627 at * 9 (N.D. Ill. Dec. 28, 2016). Since plaintiff's allegations in his second amended complaint do not vary significantly from his first amended complaint in this regard**,** the court relies on its first ruling and denies defendant Von Allmen's motion to dismiss this claim.[5]

      **10.**     **Qualified immunity against individual Johnsburg defendants Von Allmen and Rydberg.**

Defendants Von Allmen and Rydberg argue they are entitled to qualified immunity because they were not required to provide plaintiff with police reports that contain "every detail of an interview" with a particular witness. "Qualified immunity shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jackson v. Curry*, 888 F.3d 259, 262 (7th Cir. 2018) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). However, as explained above, plaintiff alleges (in paragraphs 82-100 of his complaint) defendants did not disclose exculpatory information to plaintiff; plaintiff's complaint is not limited to allegations that defendants failed to provide "verbatim recitation[s]" of witness interviews. Therefore, at this stage of the litigation, the court finds no qualified immunity and denies defendants' motion to dismiss.

      **11.**     **Respondeat superior and indemnification (Counts IX, X, XI, XII) against defendants City of Johnsburg and City of McHenry.**

Defendants argue Counts IX through XII for respondeat superior and indemnification fail because the underlying actions fail. Because the court has found no underlying constitutional violation against the Estate of Gruenes (as no estate exists), and no state law claims against defendants Rydberg and Brogan (due to the statute of limitations), the court grants the City of Johnsburg defendants' motion to dismiss Counts IX and X, and grants the City of McHenry defendants' motion to dismiss Counts XI and XII as to these defendants/claims. Apart from these specific defendants and claims, since all remaining underlying actions survive, defendants' motions to dismiss on these counts fail.

---

[5] The court notes defendant Von Allmen has not brought a motion to dismiss plaintiff's state law civil conspiracy claim (Count VIII of plaintiff's complaint).

**C.     Conclusion**

       For the foregoing reasons, defendants' motions to dismiss plaintiff's second amended complaint [73]; [82] are granted in part and denied in part.  The City of Johnsburg defendants' motion to dismiss [82] is granted without prejudice as to the Estate of Gruenes and granted with prejudice as to the state law claims against defendant Rydberg (including the corresponding respondeat superior and indemnification claims).  The City of Johnsburg defendants' motion to dismiss is otherwise denied.  The City of McHenry defendants' motion to dismiss is granted with prejudice as to the state law claims against defendant Brogan (including the corresponding respondeat superior and indemnification claims).  The City of McHenry defendants' motion to dismiss is otherwise denied.  As noted, the parties are directed to contact Magistrate Judge Johnston within 30 days to discuss whether a settlement conference or mediation would be beneficial at this time.

Date: 08/23/2018                                    ENTER:

                                                          */s/ Philip G. Reinhard*

                                                   United States District Court Judge

                                                              Electronic Notices. (LC)